S08A1059. GENERAL MOTORS CORPORATION v. CITY OF DORAVILLE.

(670 SE2d 787)

MELTON, Justice.

General Motors ("GM") appeals from an order from the Superior Court of DeKalb County, which denied GM a refund of taxes that

it paid to the City of Doraville in connection with the City's occupation tax, and which further found that Doraville's occupation tax was constitutional. On appeal, GM contends that the trial court erred in finding that Doraville's occupation tax did not violate the Commerce Clause of the U. S. Constitution, and in finding that the occupation tax did not violate Georgia law. For the reasons that follow, we affirm.

The record reveals that GM owns and operates a manufacturing facility in the City of Doraville and ships products for sale both inside and outside of Doraville and the state of Georgia. Doraville imposes an occupation tax upon businesses with one or more locations in Doraville and upon out-of-state businesses with no location or office in Georgia that

> [h]a[ve] one or more employees or agents who exert sub-
> stantial efforts within the [municipal] corporate limits for
> the purpose of soliciting business or serving customers or
> clients; or . . . [own] personal or real property which gener-
> ates income and which is located in the [municipal] corpo-
> rate limits.

See OCGA § 48-13-7 (b) and City of Doraville Code of Ordinances Chapter 6, §§ 6-601 and 6-603 (A). The occupation tax for a business with a location or office in Doraville is "based upon gross receipts . . . and the number of employees of the business."[1] Doraville Code Chapter 6, § 6-601. However, "gross receipts" specifically "shall not include . . . [p]roceeds from sale[s] to customers outside the state." Doraville Code Chapter 6, § 6-601 (B) (v). Similarly, for businesses that do not have a location in Georgia, "[o]ccupation taxes are limited to the gross receipts and the number of employees in the taxing jurisdiction." Doraville Code Chapter 6, § 6-603 (G). Thus, for businesses with a location in Doraville, and for businesses without a location in Doraville, only gross receipts from in state sales and business employees within the taxing jurisdiction are considered for purposes of calculating the occupation tax.

In 2001, 2002, and 2003, Doraville assessed its occupation tax against GM, and GM paid its occupation taxes for those years. However, GM paid these taxes under protest, and filed refund claims with Doraville for 2001, 2002, and 2003. After GM received no response from Doraville regarding its refund claims, GM filed an

---

[1] The actual tax to be paid is calculated by adding together the gross receipts tax on the sales in Doraville and an employee tax on the employees in Doraville, and then subtracting the lesser of the two taxes. See generally Doraville Code Chapter 6, § 6-603.

action under OCGA § 48-5-380[2] in DeKalb County Superior Court, seeking a refund of the occupation taxes it paid to Doraville for the tax years 2001, 2002, and 2003. Following a bench trial, the Superior Court of DeKalb County entered a Final Order and Judgment in favor of Doraville, denying GM a tax refund and finding that Doraville's occupation tax was constitutional.

1. GM claims that Doraville's occupation tax is unconstitutional because it discriminates against interstate commerce. However, the Doraville Code makes clear that no discrimination exists here, because both intrastate and interstate sellers are treated the same way under the code. Specifically, all businesses are charged the occupation tax based on their number of employees within the taxing jurisdiction and their gross receipts from sales that *do not* occur outside of the state. The interstate seller is taxed in the same manner as a business selling exclusively within the state — based on its gross receipts and the number of employees within the taxing jurisdiction. Nor is the formula used to calculate the occupation tax inherently designed to disadvantage out-of-state businesses selling within Doraville.

> In sum, [GM] ha[s] failed to show that [Doraville's occupa-tion tax], which does not seek to tax a share of interstate transactions, which focuses upon local activity, and which is assessed evenhandedly, either burdens or discriminates against interstate commerce, or violates the Commerce Clause in any other relevant way.

*American Trucking Associations v. Michigan Pub. Svc. Comm.*, 545 U. S. 429, 438 (II) (125 SC 2419, 162 LE2d 407) (2005). GM more accurately seems to complain of the prospect of being subjected to additional taxes in foreign jurisdictions solely as a result of doing sufficient business in those jurisdictions. However, an out-of-state firm with local outlets such as GM should expect to pay local taxes

---

[2] The statute states in relevant part:

In any case in which it is determined that an erroneous or illegal collection of any tax or license fee has been made by a county or municipality or that a taxpayer has voluntarily or involuntarily overpaid any tax or license fee, the taxpayer from whom the tax or license fee was collected may file a claim for a refund with the governing authority of the county or municipality at any time within one year or, in the case of taxes, three years after the date of the payment of the tax or license fee to the county or municipality.

. . .

Any taxpayer whose claim for refund is denied by the governing authority of the county or municipality or whose claim is not denied or approved by the governing authority within one year from the date of filing the claim shall have the right to bring an action for a refund in the superior court of the county in which the claim arises.

"that are uniformly assessed upon all those who engage in local business, interstate and domestic firms alike." Id.

2. GM argues that the Doraville occupation tax violates Georgia law because it is not applied uniformly. Specifically, GM claims that, based on the manner in which the tax is calculated,[3] some businesses will have to pay based on their gross receipts, while others will have to pay based on the number of employees that they have, depending on which tax generates more revenue for the City. According to GM, this means that different companies are not being classified by the same "combination of criteria." See OCGA § 48-13-10 (a). This argument, however, is misguided. OCGA § 48-13-10 specifically provides that the criteria for business classification for purposes of calculating an occupation tax can include both "[t]he number of employees of the business" and "[g]ross receipts of the business." OCGA § 48-13-10 (a) (1) and (3). Further, as shown in Division 1, the occupation tax is calculated in the same manner for every company. It is not an "alternative" tax that allows the City to pick and choose how a company is classified as argued by GM, but a single tax that is calculated by looking at the same factors and applying the same formula to each company subject to the tax. Indeed, the same "combination of criteria" is used to classify each business for purposes of determining the amount of the occupation tax, and GM's argument is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 25, 2008.

*Sutherland, W. Scott Wright, Jennifer N. Ide, Walter Hellerstein,* for appellant.

*Tom Pye,* for appellee.

---

[3] Again, the occupation tax is calculated by adding together the gross receipts tax and the employee tax on the employees in Doraville, and then subtracting the lesser of the two taxes. See generally Doraville Code Chapter 6, § 6-603.